**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**OAKFORD CORP. et al., Defendants.**

**No. 00 CIV 2426 JSR.**

United States District Court, S.D. New York.

April 30, 2001.

---

Robert Knuts, Brenda Wai Mung, S.E.C., New York City, for plaintiff.

Dominic F. Amorosa, New York City, Adria DeLandri, New York City, for D'Alessio Securities, John D'Alessio, MFS Securities, defendants.

Debra Torres, Harvey Pitt, Daniel Loeb, pro hac vice, Jonathan Scott, pro hac vice, Fried, Frank, Harris, Shriver & Jacobson, New York City, for NYSE, defendant.

Robert Raskopf, White & Case, New York City, for TheStreet.com, intervenor.

## MEMORANDUM ORDER

RAKOFF, District Judge.

While a deponent in a civil action may usually be free to reveal whether or not he has appeared before a grand jury investigating the same underlying subject matter, he is not required to do so, as the instant dispute illustrates.

The dispute involves the motion of defendants John D'Alessio, D'Alessio Securities, Inc., and MFS Securities, Inc. to compel a deponent (the "Witness") to answer questions relating to whether the Witness had appeared before a state or federal grand jury or had been interviewed by the United States Attorney's Office with respect to the same subject matter underlying this civil enforcement action. During the scheduled discovery in this case, which ended January 8, 2001, defendants' counsel had not sought to depose the Witness at all. Subsequently, at an in-court conference on January 4, 2001, defendants' counsel was given leave to take some modest additional discovery expressly limited to questions regarding the specifics of certain documents belatedly produced to plaintiff by the third party New York Stock Exchange (the "Exchange") and then produced by plaintiff to the instant defendants.[1] *See* transcript, Jan. 4, 2001, at 9–10. Even then, however, defendants' counsel did not seek to depose the Witness; but some weeks later, upon learning that parts of the belatedly produced docu-

---

1. Defendants' motion to impose sanctions on the Exchange for their belated production

was referred by the Court to Magistrate Judge Henry Pitman, who denied the motion.

ments possibly referred to statements made by the Witness, defendants' counsel sought to depose the Witness about such statements. Counsel for the Witness voluntarily agreed to such a deposition on the condition, agreed to by defendants' counsel, that it be subject to the same limitation of scope prescribed by the Court at the January 4, 2001 conference, *i.e.* the specific statements set forth in the belatedly produced documents.

The deposition occurred on February 28, 2001. Notwithstanding the aforementioned limitation, defendants' counsel, almost at the outset of the deposition, asked the Witness: "Have you ever testified in a grand jury concerning the floor broker case?" [*i.e.,* the case involving the same underlying subject matter as the instant action]. Dep. Tr. at 4. Counsel's next question was: "Have you been interviewed by anyone from the United States Attorney's Office with respect to the floor broker case?" Dep. Tr. at 5. Finally, after a few intervening questions regarding whether the Witness had been interviewed by plaintiff (which the Witness answered), defendants' counsel asked the Witness: "Have you testified before any state grand juries?" *Id.* In response to each of these quoted questions, the Witness's counsel directed the Witness not to answer the question on the ground that it exceeded the Court-ordered limitation on scope that the parties had agreed would cover this deposition. Defendants' counsel thereupon moved to compel the Witness to answer.

■ The direction not to answer in order to enforce the limitation on scope previously imposed by the Court was clearly proper, *see* Fed.R.Civ.P. 30(d)(1), and must be sustained. On no reasonable interpretation did the questions relate either to the documents in question or to the statements allegedly made by the Witness set forth in those documents. While defendants' counsel claimed at the time that the questions

pertained to the Witness's "bias and motive," Dep. Tr. at 4, the Witness had not yet said anything that would have brought these matters into issue. If speculation about a witness's bias or motive could form the basis for inquiries reaching far beyond the limited scope permitted by the Court for such a deposition, the limitation itself would quickly be rendered a nullity.

■ Separately, the motion to compel must also be denied for an independently sufficient reason, not raised at the time by the parties but subsequently briefed, to wit, a witness may not be compelled to testify whether or not he has appeared and testified before a grand jury as to a particular matter, absent a court order to do so. The ancient principle of grand jury secrecy, as referred to, for example, in Fed. R.Crim.P. 6(e), serves to protect the identity and testimony of grand jury witnesses so as to permit them to speak freely and so as to prevent witness tampering and retribution. *See, e.g., United States v. Procter & Gamble Co.,* 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *United States v. Sobotka,* 623 F.2d 764, 767 n. 1 (2d Cir.1980); *see generally* Marvin E. Frankel & Gary P. Naftalis, *The Grand Jury* (1977). While, except where otherwise provided by statute, a witness is free to voluntarily disclose his testimony before a grand jury, he may not be compelled to do so by another person; and even a court may not overcome the presumption of grand jury secrecy absent a strong showing of necessity, which—as discussed above—has not been made here. *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 222, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979); *see Arlington Glass Co. v. Pittsburgh Plate Glass Co.,* 24 F.R.D. 50 (N.D.Ill.1959).

As for the question put to the Witness regarding whether he had been interviewed by the United States Attorney's Office, while a witness may not always be

438

privileged to decline to answer such a question here the context makes plain that the question posed by defendants' counsel might well serve to obtain indirectly the information regarding the grand jury investigation that he had failed to obtain directly. Appearances before a grand jury are commonly preceded by interviews with the prosecutor's office, and where the questions put to a deponent may well impinge upon interviews ancillary to such appearances, the same protections against disclosure apply.

Accordingly, for the reasons stated above, the Court denies defendants' application to compel the Witness to answer questions concerning whether he gave testimony in state or federal grand juries or was interviewed by the United States Attorney's Office. The Witness has also requested a protective order "sealing: (i) that portion of the February 28 deposition transcript containing counsel's questions and [the Witness's] objections to those questions; and (ii) all submissions in connection with this motion." Subsequent to this request, however, intervenor TheStreet.com moved in opposition to any sealing in this case, and the Court indicated it would consider that motion as having been directed, *inter alia*, against the sealing requested by the Witness's counsel. Having so considered the matter, the Court is of the view that none of the Witness's reasons for requesting the sealing overcome the public's strong right to have access to all papers filed in connection with motions made in civil actions. *See In re Agent Orange Product Liability Litig.*, 821 F.2d 139 (2d Cir.1987). Accordingly, while defendants' motion to compel is denied, the Witness's motion to seal is likewise denied.

SO ORDERED.